**HOMEWOOD CORPORATION,**
Plaintiff,

v.

**Jack KEMP, Secretary, U.S. Department of Housing and Urban Development, et al., Defendants.**

No. C2–90–779.

United States District Court,
S.D. Ohio, E.D.

March 9, 1992.

Gregory William Kirstein, Alan L. Briggs, Columbus, Ohio, for plaintiff.

O. Charles Hosterman, U.S. Attys. Office, Edward Vaughn Miller, Sr., Columbus, Ohio, for defendants.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This Motion to Dismiss/Motion for Summary Judgment arises out of an action to recover amounts allegedly due the plaintiff, Homewood Corporation ("Homewood"), from the defendant, Jack Kemp, the Secretary of Housing and Urban Development ("HUD"). For the reasons discussed below, the Court concludes that subject matter jurisdiction is lacking. In lieu of dismissal, the Court orders this action transferred to the United States Claims Court.

## I. STATEMENT OF THE CASE

Plaintiff Homewood is a successor by merger to Northland Park Homes, Inc. ("Northland"). Northland served as the general contractor during the construction of a rental housing project for low income, elderly, and handicapped persons in Somer-

set, Ohio. This housing project, known as Somerset Lane Apartments, was developed by Defendant Somerset Lane, Inc. ("Somerset Lane"), a non-profit corporation, which also was to serve as the managing agent. Defendant HUD, pursuant to a loan agreement, provided financing for this project, commonly known as a "Section 202" or "§ 202" project.

Section 202 of the Housing Act of 1959 (12 U.S.C. § 1701q) authorizes a HUD program for the construction and management of housing projects for the elderly and handicapped. Under this program, non-profit sponsors may secure direct loans from HUD for development of § 202 projects. The non-profit sponsor/borrower enters into contracts for construction of the project directly with HUD-approved contractors. The statute and underlying regulations limit eligibility for these § 202 HUD loans to non-profit entities. Of particular relevance in this case, the statute and regulations provided that no part of the earnings of the non-profit entity may inure "to the benefit of any member, founder, contributor, of individual."

Somerset Lane acted as the non-profit sponsor in this project. In mid–1982, Somerset Lane applied for § 202 funding. HUD approved Somerset Lane's application, and the two parties entered into a contract whereby HUD agreed to finance the project (the "Building Loan Agreement"). The Building Loan Agreement prescribed the terms and conditions that HUD required of project sponsors in connection with Section 202 projects. On September 30, 1983, progress on the project proceeded as Somerset Lane signed a Construction Contract with Northland, the general contractor and predecessor of plaintiff Homewood.

Northland constructed the project. As construction progressed, HUD provided funds to Somerset Lane, which in turn paid Northland. The funds Northland has received to date represent its actual construction costs. HUD withheld the balance of the funds (over $179,000) it had agreed to provide for the Somerset Lane project. HUD refused to pay this balance, constitut-

ing Northland's profit, overhead, incentive money, and other miscellaneous costs, on the basis of an identity of interest between the sponsor, Somerset Lane, and the contractor, Northland. Such an identity of interest violates both relevant statutes and HUD regulations.

The identity of interest between Somerset Lane and Northland effectively surfaced in late 1984, following investigations by the General Accounting Office ("GAO"). The Comptroller General's opinion noted:

[T]he Articles of Incorporation for Somerset Lane ..., the borrower in this case, list as the sole corporate member the Salem Lutheran Foundation.... The Salem Lutheran Foundation Trust Agreement reflects that [it] was established by George A. Skestos and is administered by Mr. Skestos ... as co-trustee. Mr. Skestos is also listed as the President and treasurer of Homewood Corporation/Northland Park Homes, Inc. ...

On the basis of this identity of interest between the borrower and the contractor, HUD suspended funding of the project beyond the actual construction costs.

Homewood claims that Somerset Lane representatives disclosed this identity of interest to HUD prior to closing of the loan agreement. Homewood contends that the documents submitted by Somerset Lane as part of its application for § 202 assistance disclosed the identity of interest. Further, Homewood claims that a Somerset Lane representative offered, at the meeting to close the agreement, to delay closing if the HUD official had any concerns about the identity of interest.

After HUD suspended funding of the project beyond Northland's actual construction costs, Northland pursued all administrative appeals available through HUD. Obtaining no relief, the contractor sued HUD and Somerset Lane in this Court on October 18, 1990. In its suit, Plaintiff Homewood, Northland's successor in interest, as a creditor beneficiary of the Building Loan Agreement, claims that HUD has breached its contract, and in the alternative, that HUD will be unjustly enriched. Defendant Somerset Lane, arguing that

any liability it has is attributable to HUD's actions, has cross-claimed against HUD. Defendant HUD filed its motion to dismiss/motion for summary judgment in late 1991. In addition to its arguments on the merits, HUD asserts that Homewood's claim is barred by sovereign immunity and is outside the subject matter jurisdiction of this Court.

## II. HUD'S MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT

HUD presents several theories in support of its motion to dismiss/motion for summary judgment: sovereign immunity, lack of subject matter jurisdiction, failure to state a claim, and the equitable theory of plaintiff's unclean hands. The issues of sovereign immunity and subject matter jurisdiction are interrelated. Since this Court must have the authority to hear this action, these questions will be addressed together.

### Subject Matter Jurisdiction and Sovereign Immunity

The parties have expended significant effort in their memoranda on the interrelated issues of subject matter jurisdiction and sovereign immunity. Before beginning its analysis, the Court considers the following by Judge Rice useful in understanding the relationship between sovereign immunity and subject matter jurisdiction:

> Strictly speaking, ... the immunity defense available to the sovereign does not necessarily present, and should not be confused with the question of subject matter jurisdiction. (citations omitted). The district court may have the power to adjudicate a claim against the sovereign under its general federal question *jurisdiction,* just as the court might equally have jurisdiction in an action against any other legal entity; but the court must find that such claim is not viable unless the sovereign has *consented to be sued* in that court in the same manner as another legal entity. Conversely, the sovereign may consent to be sued in a

given case, but the district court may lack subject matter jurisdiction over the otherwise viable claim if no substantial federal question is presented, diversity is wanting, and no other statutory jurisdictional predicate is applicable.

*Brewer v. Dept. of Hous. and Urban Dev.,* 508 F.Supp. 72, 75 (S.D.Ohio 1980) (emphasis added).

Plaintiff Homewood's action is properly before this Court therefore only if 1) the Defendant HUD has waived its sovereign immunity, and 2) the Court has subject matter jurisdiction. Defendant HUD, in the memorandum in support of its motion to dismiss/motion for summary judgment, argues that no such waiver of its sovereign immunity exists, and that, even if it did, jurisdiction to hear this suit lies, on the basis of the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491(a), exclusively with the United States Claims Court. Although the Court finds that HUD has waived its sovereign immunity in a statutory consent to be sued, this Court cannot adjudicate Homewood's claim since subject matter jurisdiction is lacking.

### Subject Matter Jurisdiction

Plaintiff Homewood's action is properly before this Court, and may be addressed by the Court, only if subject matter jurisdiction exists. *Memphis American Federation of Teachers v. Board of Education,* 534 F.2d 699 (6th Cir.1976). In its complaint, Homewood asserts that it is bringing the action to enforce duties arising under federal statutory law, 12 U.S.C. § 1701q *et seq.* Such an action would clearly fall within the Court's federal question jurisdiction. 28 U.S.C. § 1331.[1] In its Memorandum Contra Defendant's Motion to Dismiss/Summary Judgment, (hereinafter "Memorandum Contra"), however, Homewood characterizes its action as "a breach of contract claim against the federal defendants." Memorandum Contra, p. 25. Further, the Court agrees with Defendant HUD's assertion that this suit, although nominally against HUD, is in substance a

---

**1.** Section 1331 provides: The district courts shall have original jurisdiction of all civil action

arising under the Constitution, laws, or treaties of the United States.

suit against the United States. *Portsmouth Redevelopment and Housing Authority v. Pierce,* 706 F.2d 471, 473–74 (4th Cir.1983). This Court's jurisdiction in such cases is limited by the Tucker Act. 28 U.S.C. §§ 1346, 1491.[2] Finding Homewood's action to be, in essence, a breach of contract action by an intended-creditor beneficiary against the United States, the Court concludes that it lacks subject matter jurisdiction. 28 U.S.C. § 1346(a)(2). Instead, as will be addressed below, the Claims Court has exclusive jurisdiction.

This Court would clearly have subject matter jurisdiction if the amount in dispute did not exceed $10,000. 28 U.S.C. § 1346(a) (pursuant to the "Little Tucker Act," a district court's jurisdiction to adjudicate claims founded upon express or implied contracts with the United States exists concurrently with the Claims Court). A question arises, however, since the amount claimed by Homewood exceeds the threshold amount of $10,000. When faced with this question, some courts have concluded that § 1346(a) divests the district courts of jurisdiction over claims against the United States exceeding $10,000, and places such jurisdiction exclusively in the Claims Court in Washington.

The Tucker Act sets forth the jurisdiction of federal courts to hear monetary claims against the United States, as well as provides a limited waiver of sovereign immunity. 28 U.S.C. §§ 1346, 1491. The Claims Court has subject matter jurisdiction over such claims founded upon the Constitution, laws, and regulations of the United States, or upon any express or implied contract with the United States. 28 U.S.C. § 1491(a)(1). The district courts have original jurisdiction, concurrent with

the Claims Court, for such claims not exceeding $10,000 in amount. 28 U.S.C. § 1346(a)(2). By its plain language, therefore, this provision removes jurisdiction from the district courts for actions, such as Homewood's, wherein the amount sought exceeds $10,000. The jurisdiction of the Claims Court over these actions is apparently exclusive.

Other courts faced with the question of the exclusivity of the Claims Court's jurisdiction for claims over $10,000 have determined that the Tucker Act does not remove jurisdiction from the district courts. A recent United States Court of Appeals for the Second Circuit case, principally relied upon by Homewood, determined that the Tucker Act does *not* vest exclusive jurisdiction in the Claims Court for claims against the United States exceeding $10,000. *C.H. Sanders Co. v. BHAP Housing Dev. Fund Co.,* 903 F.2d 114, 118 (2d Cir.1990) ("The Tucker Act does not expressly state that the jurisdiction of the Claims Court is exclusive. We find that omission significant." *Id.* at 119.). Instead, that court, as well as others within the same line of jurisprudence, have concluded that the $10,000 maximum serves only as a limitation upon the waiver of sovereign immunity provided by the Tucker Act. *See also Western Secur. Co., Subsidiary of Universal Mortg. Corp. v. Derwinski,* 937 F.2d 1276, 1279 (7th Cir.1991). That is, when an independent waiver of sovereign immunity, outside of the Tucker Act exists, the district court retains subject matter jurisdiction over claims exceeding $10,000.

This reasoning was succinctly explained by Judge Newman of the District Court in Connecticut. *Ghent v. Lynn,* 392 F.Supp. 879, 881 (D.C.Conn.1975). That court, in

---

**2.** Section 1346(a)(2) provides, in pertinent part:

(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, ... except that the district courts shall not have jurisdiction of any civil action or claim against the United

States founded upon any express or implied contract with the United States ... which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978....

Section 1491(a)(1) provides, in relevant part: (a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States....

concluding its analysis of the subject matter jurisdiction/sovereign immunity question noted: "[T]he jurisdiction of the Claims Court is not exclusive; rather, there is rarely any statute available that waives sovereign immunity for suits in the district court, other than the Tucker Act [Section 1346(a)(2)] with its $10,000 limit." *Id.*

This Court finds such an analysis contrary to the plain language of the Tucker Act, particularly § 1346(a)(2), which relates to the *jurisdiction* of the district courts. Notwithstanding this Court's disagreement with the *Sanders/Ghent* analysis, this Court concludes that the United States Court of Appeals for the Sixth Circuit has already implicitly rejected that approach.

The Sixth Circuit has apparently not completely addressed the boundaries of the district courts' jurisdiction as circumscribed by the Tucker Act and divested by the Claims Court. In several opinions, however, the Sixth Circuit has indicated that the jurisdiction of the Claims Court is exclusive for certain claims exceeding $10,000. *Matthews v. United States,* 810 F.2d 109, 111 (6th Cir.1986); *Tennessee ex rel. Leech v. Dole,* 749 F.2d 331, 335 (6th Cir. 1984), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985). In the *Leech* case, the court stated that the exclusive jurisdiction of the Claims Court lies only in actions *founded upon contracts* (with the United States) involving more than $10,000. *Id.* An action against the United States arising under the Constitution, laws, and regulations of the United States involving more than $10,000 would apparently remain within the jurisdiction of the district courts.

At this point, Plaintiff Homewood would interject with the *Sanders/Ghent* argument, asserting that the divestment of jurisdiction from the district courts is not necessary when an independent waiver of sovereign immunity exists. This Court will accept, *arguendo,* that HUD has waived its sovereign immunity, independently of the Tucker Act. *See* 12 U.S.C. § 1701q(b). Nonetheless, the Court finds that the Tucker Act, so far as the Sixth Circuit has construed it, divests the district court of jurisdiction in this action.

The Court of Appeals for this circuit most recently addressed the question of the exclusivity of the Claims Court's jurisdiction in *A.E. Finley & Assoc. v. United States,* 898 F.2d 1165 (6th Cir.1990). In *Finley,* the court acknowledged that in the case before it, subject matter jurisdiction *and* a waiver of sovereign immunity, independent of the Tucker Act, were present. *Id.* at 1167. Nevertheless, the court proceeded to analyze whether the Claims Court's jurisdiction was exclusive. "[I]f an action rests within the exclusive jurisdiction of the Claims Court under the Tucker Act, ... the district court does not have jurisdiction regardless of other statutory bases." *Id.* The *Finley* court further stated that section 1346 gives the Claims Court exclusive jurisdiction over *all* Tucker Act claims exceeding $10,000, thus apparently broadening its view of the exclusivity of the jurisdiction of the Claims Court. *Id., citing United States v. Hohri,* 482 U.S. 64, 66 n. 1, 107 S.Ct. 2246, 2249 n. 1, 96 L.Ed.2d 51 (1987). The *Finley* court concluded its analysis by noting that the jurisdiction of the Claims Court is *exclusive in actions founded upon a contract* with the United States. *Id.* (emphasis added). *See also Chemung County v. Dole,* 781 F.2d 963, 967 (2d Cir.1986).

Plaintiff Homewood has stated that this action arises out of the Building Loan Agreement between HUD and the sponsor/borrower Somerset Lane. As such, the action is founded upon a contract with the United States. In such circumstances, this Court must conclude that the action lies within the exclusive jurisdiction of the Claims Court.

Even if this action is deemed not to be an action founded upon a contract with the United States, the Court feels compelled to follow the unambiguous language of section 1346(a)(2) itself. The question of the exclusivity of Claims Court jurisdiction, when coupled with an independent waiver of sovereign immunity, has never been directly and completely answered in this circuit. This Court infers from the discus-

sions in *Finley* and *Leech* that the Sixth Circuit, upon consideration of this precise issue, would likewise reject the *Sanders/Ghent* analysis, leaving jurisdiction over claims against the United States exceeding $10,000 exclusively in the Claims Court.

The Court further concludes that Plaintiff Homewood's third claim for relief asserting unjust enrichment and demanding an equitable lien on the project does not rectify this Court's lack of subject matter jurisdiction over this action. Instead, the Court considers this alternative theory as an attempt to avoid the exclusive jurisdiction of the Claims Court, when the result would be the equivalent of money damages. *Leech*, 749 F.2d at 336.

■ To the extent that this Court does have subject matter jurisdiction over Plaintiff Homewood's equitable claim, however, the Court grants Defendant HUD's motion for summary judgment. The prohibited identity of interest between Plaintiff and the sponsor/borrower Somerset Lane has been established. The Comptroller General's Report, attached as Exhibit B of HUD's Motion to Dismiss/Motion for Summary Judgment, as well as Exhibit C of the Complaint demonstrate this. Plaintiff Homewood acknowledges that it has exhausted all administrative appeals. (Memorandum Contra, p. 6). Section 10(b) of the Contract Disputes Act of 1978 limits a court's ability to review decisions of fact made by agency boards, such as HUD's. 41 U.S.C. § 609(b).[3] The Court finds none of the circumstances permitting review of the agency board's factual determinations present here. Consequently, the identity of interest is established.

This identity of interest violates both federal statutory and regulatory guidelines governing Section 202 projects. 12 U.S.C. § 1701q(d)(2); 24 C.F.R. § 885.5. Therefore, Plaintiff Homewood stands before this Court with unclean hands. In this instance, the Court believes that equitable relief is not appropriate. *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). Therefore, to the extent that the Court has subject matter jurisdiction over Plaintiff's equitable claim, Defendant HUD's motion for summary judgment is hereby GRANTED.

■ The Court's power to adjudicate the merits of Homewood's contract claims ends upon the determination that no subject matter jurisdiction exists. However, under appropriate circumstances, the Court does have statutory authority to order the transfer of the case to an appropriate forum, which in this case would be the Claims Court. 28 U.S.C. § 1631. Section 1631 provides, in pertinent part: "Whenever a civil action is filed in a court ..., and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought...." Consequently, having concluded that jurisdiction is wanting in the district court, this Court *must* transfer Homewood's action to the Claims Court, unless it determines such a transfer not to be in the interest of justice. The Court concludes that transfer is in the interest of justice.[4]

### III. CONCLUSION

This Court lacks subject matter jurisdiction. In lieu of dismissal, the Court finds

---

**3.** 41 U.S.C.A. § 609(b), Section 10(b) of the Contract Disputes Act of 1978 provides:

   In the event of an appeal by a contractor ... from a decision of any agency board ..., the decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

**4.** *See* Jeffrey W. Tayon, *The Federal Transfer Statute: 28 U.S.C. Sec. 1631, 29 S.TEX.L.REV.* 189, 214–24 (1987), for a discussion of some of the considerations in determining if transfer is in the "interest of justice." Although the Court concludes that, as a matter of law, the transfer must be made, it does so with some hesitation. Having reviewed the applicable law, the Court was prevented from granting Defendant HUD's summary judgment, in total, only by its lack of subject matter jurisdiction.

that, pursuant to Section 1631, transfer is appropriate. The Clerk of Courts for the Southern District of Ohio is hereby ORDERED to TRANSFER the instant matter to the United States Claims Court.

IT IS SO ORDERED.