**In re PLUM RUN SERVICE CORP., Debtor.**

**PLUM RUN SERVICE CORP., Plaintiff,**

v.

**UNITED STATES of America DEPARTMENT OF NAVY, Defendant.**

**Bankruptcy No. 93–50131.**
**Adv. No. 2–93–0278.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

April 5, 1994.

Michelle Sutter, Ricketts & Onda, Columbus, OH, for debtor/plaintiff.

Brenda L. Dodrill, Asst. U.S. Atty., Columbus, OH, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION TO TRANSFER TO COURT OF FEDERAL CLAIMS

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This adversary action was initiated by Debtor, Plum Run Service Corp. ("Debtor" or "Plum Run") against the United States of America, Department of Navy ("Navy"). The matter before the Court is the Navy's Motion to Transfer this adversary action, pursuant to 28 U.S.C. § 1631 to the United States Court of Federal Claims which the Navy contends has exclusive jurisdiction under 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1). Alternatively, the Navy contends that the case should be dismissed and jurisdiction should be deferred to the Armed Services Board of Contract Appeals ("ASBCA") because this Court lacks subject matter jurisdiction pursuant to 41 U.S.C. § 601 et seq., also known as the Contract Disputes Act of 1978 ("CDA").

The Court need not make a determination, at this juncture, as to whether the proceeding is "core." Without question, if this is not a "core proceeding", it is "otherwise related to a case under title 11," thus providing the Bankruptcy Court with jurisdiction over this matter under 28 U.S.C. § 157(c)(1) as set forth below.

### I. Findings of Fact

In or about September 1992, Plum Run was notified that it was the successful bidder for a contract to provide base maintenance, support and repair services at the United States Naval Base, Guantanamo Bay, Cuba ("the BOS Contract"). The BOS Contract provided a one year term, for October 1, 1992 through September 30, 1993, and authorized

the Navy to extend the contract performance by one year option periods through September 30, 1997. The BOS Contract required Plum Run to perform a number of different services.

Starting with a dispute concerning payment for Plum Run's mobilization, Plum Run and the Navy had ongoing disagreements concerning the terms of the BOS Contract, and payment obligations. Plum Run alleges numerous contract breaches by the Navy, and the Navy has made allegations concerning the inadequacy of the work performed by Plum Run. Plum Run also alleges improper withholdings of sums due to Plum Run by the Navy, as well as the effectuation of set-offs against Plum Run's accounts receivable in violation of the automatic stay.

Plum Run filed this Chapter 11 proceeding on January 11, 1993. Thereafter, the Navy brought a Motion for Relief From Automatic Stay requesting the right to take all actions necessary to terminate the housing maintenance portion of the BOS Contract. Debtor and Plum Run entered into an agreed order, subsequently approved by this Court, granting the Navy's Motion for Relief From Automatic Stay in this regard.

Debtor initiated this adversary proceeding by a Complaint filed August 19, 1993. In its original Complaint (paragraph No. 49), Plum Run indicates that it appealed the Navy's termination for default of portions of the BOS Contract to the ASBCA pursuant to the CDA (docketed as ASBCA Nos. 46090 and 46091). Plum Run also indicated that it intended to file motions with the ASBCA to stay those proceedings pending resolution of Plum Run's adversary action against the Navy. Plum Run also filed a motion in its main bankruptcy proceeding to assume the BOS Contract, and compel the Navy to exercise the options connected therewith. After extensive hearings and briefings, the Court denied Plum Run's Motion to Assume the BOS Contract, and that decision was affirmed on appeal by the United States District Court for the Southern District of Ohio.

On September 10 and September 14, 1993 respectively, the Navy filed a motion and supplemental motion to dismiss this adversary action, alleging that the Bankruptcy Court had no jurisdiction in light of the CDA. The Bankruptcy Court denied the Navy's Motion to Dismiss by an Order entered October 7, 1993. Thereafter, on December 3, 1993, the Navy filed its Motion to Transfer Action to the Court of Federal Claims pursuant to 28 U.S.C. § 1631.

II. *Conclusions of Law*

■ The Navy asserts that this case involves a breach of government contract action, and that the Claims Court has exclusive, not concurrent, jurisdiction to hear this case, regardless of any other statutory bases upon which the District Court (or the Bankruptcy Court) might rely. In response, Debtor asserts, and this Court agrees, that the Bankruptcy Court has subject matter jurisdiction because Debtor has satisfactorily alleged matters that are "related to a case under title 11." Plum Run also contends (1) that resolution of this matter would affect the estate in bankruptcy; (2) that the Navy violated the automatic stay provisions of 11 U.S.C. § 362 by effecting setoffs against monies allegedly due Plum Run after the filing of the bankruptcy petition; and (3) that 28 U.S.C. §§ 157 and 1334 provide independent bases for bankruptcy court jurisdiction despite the seemingly exclusive jurisdiction granted to the Claims Court to decide contract actions involving the United States as a party.

> 28 U.S.C. Section 1334 provides, in part:
>
> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Additionally, 28 U.S.C. § 157 provides, in pertinent part:

> (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title

11 shall be referred to the bankruptcy judges for the district.

28 U.S.C. § 157(b)(1) states that bankruptcy judges may hear and determine with finality, all cases under title 11 and all "core" proceedings. "Core" proceedings are those that "arise under" title 11 or "arise in" a case under title 11. 28 U.S.C. § 157(c)(1) states that a bankruptcy judge may hear a "non-core" proceeding if it is otherwise "related to" a case under title 11.

28 U.S.C. § 157(b)(2) provides a nonexhaustive list of core proceedings. Since no definition of "core" proceeding is found in the statute, tests have evolved through case law to identify non-core proceedings.

 A proceeding is not core if:

(1) It is not specifically identified as a core proceeding under § 157(b)(2)(B)–(N);

(2) the cause of action existed prior to the filing of the bankruptcy petition;

(3) the cause of action would continue to exist independent of the provisions of title 11; and

(4) the parties' rights, obligations, or both, are not significantly affected as a result of the filing of the bankruptcy petition.

*Hughes–Bechtol v. Construction Management,* 144 B.R. 755, 757 (S.D.Ohio 1992). Each prong of the test must be met if a proceeding is not core. Courts have given a broad interpretation to "core" proceedings. *Hughes–Bechtol,* 144 B.R. at 758.

 Here, the breach of contract allegations are not specifically identified as a core proceeding under § 157(b)(2)(B)–(N). The BOS Contract was entered into prior to the filing of the bankruptcy petition. Such causes of action would continue to exist independent of the provisions of title 11. However, the parties' rights and/or obligations were affected by the filing of the bankruptcy petition. Additionally, the allegation that the Navy violated the automatic stay provisions of 11 U.S.C. § 362 constitute a core proceeding. Nonetheless, the heart of Plum Run's claim is for breach of contract by the Navy, an issue which necessitates consideration of the jurisdictional quagmire created by the CDA, and the broad jurisdictional grants given to the Claims Court when the United States is a defendant, and the district courts to handle bankruptcy matters.

The purpose of the CDA was to provide a "fair, balanced and comprehensive statutory system [for] resolving government contract claims." *See* S.Rep. 95–1118, 95th Cong. 1st Sess., reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5235. Under the CDA, "All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). Within 90 days of receiving the decision from the contracting officer, the contractor may appeal the decision to an agency board of contract appeals. 41 U.S.C. § 606. "Each agency board shall have jurisdiction to decide any appeal from a decision of a contracting officer (1) relative to a contract made by its agency ..." 41 U.S.C. § 607(d). The decision of the agency board of contract appeals is appealable to the United States Court of Appeals for the Federal Circuit within 120 days after the date of receipt of the decision. 41 U.S.C. § 607(g). As an alternative to review by the agency board of contract appeals, a contractor may bring an action directly on the claim in the United States Court of Federal Claims. 41 U.S.C. § 609(a)(1).

In analyzing the jurisdiction of the Claims Court, 28 U.S.C. § 1346 provides that when the United States is a defendant:

(a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of ...

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, *or upon any express or implied contract with the United States,* ... except that the district court shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States ... which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978 ... (emphasis added)

28 U.S.C. § 1491(a)(1) provides, in relevant part:

> (a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States ...

When Bankruptcy Court jurisdiction and Claims Court (or CDA) jurisdiction are invoked, courts are faced with "inclusive, exclusive, sweeping schemes, [each] of which the Supreme Court has endorsed." *Gary Aircraft Corp. v. United States (Matter of Gary Aircraft Corp.)*, 698 F.2d 775, 780 (5th Cir. 1983), *cert. den.* 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92. The essential question this Court must answer is whether the grant of jurisdiction for the CDA and Claims Court displaces the broad grant of jurisdiction given the district courts concerning bankruptcy cases and proceedings. For the reasons stated below, this Court holds that neither the ASBCA nor the Claims Court have exclusive jurisdiction in this matter.

The Navy relies on a line of cases holding that the Claims Court has exclusive jurisdiction for breach of contract claims with the United States involving more than $10,000. 28 U.S.C. § 1346(a)(2) and 28 U.S.C. § 1491(a)(1). *See, e.g., Cessna Aircraft Co. v. Department of the Navy*, 744 F.Supp. 260 (D.Kan.1990); *A.E. Finley & Associates, Inc. v. United States*, 898 F.2d 1165 (6th Cir. 1990); *Homewood Corp. v. Kemp*, 786 F.Supp. 1315 (S.D.Ohio 1992). While all of these cases examined the jurisdiction of the Claims Court, none did so in the context of a bankruptcy case. These cases did not address the inherent conflict between the broad grants of jurisdiction given to district courts for bankruptcy proceedings, and the broad grant of jurisdiction given to the Claims Court, or under the CDA. Plum Run cites cases acknowledging district court jurisdiction over civil proceedings arising in or related to a case under title 11 due to the independent grant of jurisdiction provided by the "notwithstanding any Act of Congress" clause found in 28 U.S.C. § 1334(b). *See,*

*e.g., Casey Corp. v. Big Blue River Conservancy District (In re Casey Corporation)*, 46 B.R. 473 (Bankr.S.D.Ind.1985); *Town & Country Home Nursing Services, Inc. v. Blue Cross of California (In re Town & Country Home Nursing Services, Inc.)*, 112 B.R. 329 (9th Cir. BAP 1990).

■ This Court agrees with the cogent reasoning of the Court in *In re Gary Aircraft, supra.* While the court in *Gary Aircraft* never explicitly stated that the district courts and the Claims Court had concurrent jurisdiction, the court concluded that the bankruptcy court should exercise discretion to defer to the appropriate tribunal. The Court must assume existence of subject matter jurisdiction or there would be no discretion to exercise in deferring to the appropriate tribunal. The *Gary Aircraft* Court ruled that the bankruptcy court should stay its action on the government contract dispute and allow the Board of Contract Appeals to conclude its action. The existence and valuation of Debtor's claim against the Navy is in the expertise of the ASBCA, especially in light of the fact that this claim may, as in *Gary Aircraft*, constitute Debtor's sole significant asset. *See Gary Aircraft*, 698 F.2d at 785. This Court therefore finds that it has jurisdiction to hear this proceeding, but should defer to the expertise of the ASBCA. *See Misener Industries, Inc. v. United States (In re Misener Industries, Inc.)*, 54 B.R. 89 (Bankr.M.D.Fla.1985); *In re Invader Corp.*, 71 B.R. 564 (Bankr.W.D.Tex.1987); and *Gary Aircraft*, supra.

The Navy brings its motion to transfer this adversary action pursuant to 28 U.S.C. § 1631. However, given this Court's finding of concurrent jurisdiction, reliance upon that section is misplaced. 28 U.S.C. § 1631 provides, in pertinent part:

> Whenever a civil action is filed in a court ... and that court finds that there is a *want of jurisdiction*, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed.... (emphasis added)

This section only applies when there is a "want" of jurisdiction. Since this Court has

concurrent jurisdiction, there is no "want" of jurisdiction to provide a basis for transfer. Given the absence of any statutory basis for transfer, the *Gary Aircraft* Court concluded that bankruptcy judges should exercise discretion to "defer a claim to another tribunal." *In re Gary Aircraft,* 698 F.2d at 780.

While the bankruptcy courts have oscillated as to whether they should defer to the Claims Court in certain proceedings, the rulings have largely been the result of fact-specific circumstances.

Whether such discretion is to be exercised is a matter of law, almost pure law. The methodology of the exercise of discretion is brought to the judge, freighted and burdened by very high level principles of law. We are here dealing with a model form of deference because the forum to which the adjudication is initially assigned is technically equipped and experienced in the field to such an extent that it can make the job of a bankruptcy judge making ultimate determinations regarding the debtor easier, with greater harmony and symmetry within the existing body of government contracting law.

*In re Gary Aircraft Corporation,* 698 F.2d at 785.

■ Under the analysis in *Gary Aircraft,* the court would have the ability to exercise its discretion to transfer this proceeding to the Court of Federal Claims, although there is no statutory basis for the transfer. However, it is the opinion of the Court that it should abstain from hearing the Complaint under 28 U.S.C. § 1334(c)(1), and allow the matter to proceed before the ASBCA. An analysis of the propriety of abstention includes:

(1) The effect on the efficient administration of the estate;

(2) The extent to which state law or other federal law issues predominate over bankruptcy issues;

(3) The difficulty or unsettled nature of the applicable state or other federal law;

(4) The presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5) The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(6) The feasibility of severing state or other federal law claims from core bankruptcy matters; and

(7) Any other relevant inquiries.

*See Staats v. Adolfson & Peterson, Inc., (In re Statewide Pools, Inc.),* 126 B.R. 877, 883 (Bankr.S.D.Ohio 1991); and *Shelly's, Inc. v. Food Concepts of Wisconsin, Inc. (In re Shelly's, Inc.),* 97 B.R. 370, 372 (Bankr.S.D.Ohio 1989).

Here, it is clear that other federal law issues predominate over the bankruptcy issues. As set forth above, the Complaint is primarily one of government contract law, with the only bankruptcy issue being the alleged violation of the automatic stay by post-petition setoffs effected by the Navy. That issue can be determined as a core proceeding once the threshold government contract issues have been resolved. The nature of the government contract issues are complex, and the Court believes that the ASBCA would be uniquely suited for determining these matters. Without question, the CDA provides jurisdiction to the ASBCA. The Court also notes that debtor here previously had the choice of raising these issues before the Court of Federal Claims (41 U.S.C. § 609), or the ASBCA (41 U.S.C. § 605), and chose the ASBCA route. The Court does not feel obliged to give Debtor a third choice of forum under these circumstances.

The Court finds that abstention under 28 U.S.C. § 1334(c)(1) is appropriate. The overwhelming majority of issues center on the resolution of a government contract and the ASBCA has unique expertise for this purpose. *See Matter of Page–Wilson Corp.,* 37 B.R. 527, 529 (Bankr.D.Conn.1984) ("If a specialized area of federal law is involved in liquidating a claim and a specialized federal tribunal has been provided, the bankruptcy court will defer to that tribunal.")

■ Another means of examining the issue is through the doctrine of primary jurisdiction:

That doctrine provides that a court with jurisdiction may defer resolution of a tech-

nical factual issue to an administrative agency having expertise beyond the normal competence of judges in order to preserve consistency and uniformity in regulation of the business entrusted to that agency.

*In re McLean Industries, Inc.,* 76 B.R. 328, 331 (Bankr.S.D.N.Y.1987). While this doctrine deals with the relationship between courts and administrative agencies, it can easily be applied by analogy to this situation. Where two courts have jurisdiction, but one has unique expertise and specialized knowledge to handle the case in a manner advantageous to both parties, that court should hear the case. To allow the ASBCA to handle this case would not impair "the primary goal of bankruptcy" which is to satisfy all claims against a bankruptcy estate in a central forum. *Gary Aircraft,* 698 F.2d at 783. Given that the vast majority of this case involves government contractual matters that are specifically, routinely, and ably handled by the ASBCA, this Court finds that the ASBCA is the proper forum.

For the reasons set forth above, the Court finds that it has concurrent jurisdiction over this adversary action, but shall abstain from hearing this matter since it is largely one of government contracting law and the ASBCA is specially equipped to expeditiously deal with such matters. The automatic stay violation claim is a core proceeding, the merits of which may be determined at a later time.

Based on the foregoing, it is hereby

ORDERED THAT the Navy's Motion to Transfer to the Court of Federal Claims is hereby DENIED; and it is further

ORDERED THAT the Court shall abstain from hearing this matter pursuant to 28 U.S.C. § 1334(c)(1), and allow the action to go forward before the Armed Services Board of Contract Appeals.

IT IS SO ORDERED.